PERSONNEL BOARD OF the COMMON-WEALTH OF KENTUCKY and George L. Atkins, Auditor of Public Accounts, Movants,

v.

Shirley G. AYERS, Respondent.

Supreme Court of Kentucky.

July 6, 1982.

Rehearing Denied Aug. 24, 1982.

Steven L. Beshear, Atty. Gen., Martin Glazer, Carl Miller, Asst. Attys. Gen., Max M. Smith, Frankfort, for movant.

Edward F. Prichard, Jr., W. Patrick Stallard, Frankfort, Ronald C. Morgan, Albuquerque, N.M., for respondent.

STERNBERG, Justice.

This is an action relating to layoffs and reemployment of a state employee. Respondent was a merit employee in the office of the Auditor of Public Accounts, having been thus employed in February, 1970. In June, 1975, shortly before the end of her term of office, the then Auditor of Public Accounts, Mary Louise Foust, created a new position in classified service of the state merit system known as public accounts legal adviser. The creation of this position was duly approved by the Department of Personnel and the work station was fixed as Frankfort, Kentucky. Respondent was duly appointed to fill this newly created position. Ms. Foust, however, labored under the erroneous impression that respondent's work station was Bowling Green, Kentucky.

Movant George L. Atkins was duly elected Auditor of Public Accounts for the Commonwealth at the regular general election in November, 1975, and took office in January, 1976. Shortly after being sworn in as auditor, Atkins determined that a legal adviser to his department was not needed since he had full access to the office of the State Attorney General and the many county attorneys of the Commonwealth for legal advice. Respondent, when so advised, expressed his disapproval to this determination; nevertheless, on April 5, 1976, three months after taking office, Atkins created a layoff plan abolishing the position of legal adviser. The plan was duly and forthwith approved by the Personnel Board of the Commonwealth. On April 9, 1976, subsequent to the approval of the plan, respondent was notified in writing that he was laid off. He was advised therein of his right to appeal and was extended an offer of help in gaining similar employment in another agency of state government.

From his layoff the respondent duly appealed to the State Personnel Board. KRS 18.270. On February 17, 1977, after a hear-ing, the Board filed findings of fact, conclusions of law, and ordered that respondent's layoff be sustained. From this final order of the Board sustaining the layoff respondent appealed to the Franklin Circuit Court. KRS 18.272. The Franklin Circuit Court held that "The Board's action herein was neither arbitrary upon the facts presented, nor did it misapply their legal effect. Accordingly, the Order is affirmed, at Petitioner's costs." On appeal by respondent to the Kentucky Court of Appeals, the judgment of the Franklin Circuit Court and the decision of the Personnel Board were reversed. The Court of Appeals, in stating the issue, said:

"The question is whether a merit system employee with status may be laid off by an appointing authority by reason of the abolition of his position where the employee is qualified for other positions in the department, has longer length of service than other employees currently filling those positions and where the appointing authority makes no attempt before the layoff to place the employee in another position for which he is qualified."

It is to be noted that the Court of Appeals did not consider or decide any issue directed at political machinations. We shall limit our opinion to the issues raised in and discussed by the Court of Appeals.

The respondent challenges his layoff with the charge that it was not in keeping with 101 KAR 1:120, Section 2, 101 KAR 1:070, Section 7, and 101 KAR 1:080, Section 6. 101 KAR 1:120 requires the Personnel Board to adopt rules relating to layoffs. Section 2 thereof, dealing with layoffs, provides as follows:

"Section 2. Layoffs. (1) An appointing authority may layoff an employee in the classified service whenever he deems it necessary by reason of shortage of funds or work, abolishment of a position, or other material change in duties or organization. An employee with status may appeal his lay-off in accordance with 101 KAR 1:130. The employee shall be notified of the effective date and shall be

given written notice of the reasons for the layoff and of his right to appeal.

(2) Seniority, performance appraisals, conduct, qualifications and type of appointment shall be considered in determining the order of layoffs in a manner prescribed or approved by the commissioner. No status employee is to be separated by layoff while there are provisional, temporary, emergency, or probationary employees serving in the agency in the same class in the same locality.

(3) The appointing authority and the department shall attempt to place the employee in another position for which the employee is qualified."

Respondent's claim strikes at the very heart of the state personnel merit system. In *Thompson v. Huecker*, Ky.App., 559 S.W.2d 488 (1977), the court was faced with an issue similar to that presently before this court. In facing that issue, the Court of Appeals wrote:

"*Failure to Place Thompson in Another Position*

Thompson contends that his layoff was unlawful because it was not carried out in compliance with the personnel rules then governing such a layoff. When a merit-system employee's position was abolished, Rule 13.2(c) of the personnel rules promulgaged by the Department of Personnel (now 101 KAR 1:120, § 2) provided:

The appointing authority and the Department shall attempt to place the employee in another position for which the employee is qualified.

Because the personnel board found that little effort had been made to place Thompson in other employment, he argues that his layoff was invalid.

Thompson's argument ignores other applicable regulations. Rule 9.6 of the personnel rules (now 101 KAR 1:080, § 6) provided in part:

Any employee with status, who has been placed in a lay-off category, shall have first priority for consideration in filling any vacancy in a covered position for which he is qualified in any department in any geographic area. A status employee in the lay-off category must indicate in writing to the Department of Personnel that he desires re-employment.

Rule 8.7 of the personnel rules (now 101 KAR 1:070, § 7) provided in part:

Any employee with status who has been laid off in accordance with Rule 13 shall be entitled to have his name on a re-employment list for the class of position from which laid off, provided he so requests in writing.

Construing all three rules together, we conclude that a reorganization plan which abolished merit positions could be implemented prior to finding other positions for the laid-off employees. Any other interpretation would stifle bona fide efforts to modernize state government. The interest of the laid-off employee can be protected by placing his name on the re-employment list, if he so requests in writing. If he is on the re-employment list, no vacancy can be filled without first giving him full consideration for employment. If, for political reasons, the employee is not offered another position for which he is qualified, the employee may seek redress before the personnel board. KRS 18.310(1); KRS 18.270; 101 KAR 1:130, § 1)."

There is a misunderstanding of the purpose of 101 KAR 1:120. This section does not authorize or provide for the abolition of a position of employment. It is directed at the recourse which is available to a person who happens to be laid off by reason of the abolition of a position. In other words, abolition of a position as against recourse of an employee who has been laid off by reason of the abolition of a position of employment. We do not consider this action to be an attack on the propriety of the abolition of the position of legal adviser to the office of the state auditor; we consider it an attack on the failure of the auditor to re-hire respondent as a field auditor after abolishing the position formerly held by him.

## 101 KAR 1:120, Section 2(1)

■ Respondent was duly notified that the reason for his layoff was that there was no further need for a legal adviser to the auditor's office since the State Attorney General and the many county attorneys of the Commonwealth were available for legal advice. The Board found that the auditor was justified in doing away with such office. Although respondent disagreed with the abolition of this office, this is an administrative decision for the auditor to make. In the event respondent was dissatisfied with this action, he had the right of appeal, which, in the instant case, was invoked. There was no arbitrary action shown on the part of the auditor.

## 101 KAR 1:120, Section 2(2)

In discussing this rule, counsel for respondent in his brief writes:

"[P]aragraph two requires the agency to layoff in an order which is based on considerations of seniority, job performance, conduct, qualifications, and type of appointment and further provides a status employee protection over provisional, temporary, emergency and probationary employees...."

■ Respondent fails to recognize the last twelve words of this section which limit the application of this rule to the named employee—"serving in the agency in the same class in the same locality," class—legal adviser; location—Bowling Green, Kentucky. No one other than this respondent had any seniority as legal adviser to the auditor; no one in the Bowling Green area had more seniority and no one had any less seniority than respondent since he was the one and only person who had filled this newly created position. The Personnel Board found that there were no other "provisional, temporary, emergency or probationary employees serving in the agency in the same class in the same locality." We find no violation of this section of the regulations.

## 101 KAR 1:120, Section 2(3)

Counsel for respondent states "paragraph three mandates an attempt at placement of the employee in a position for which he or she is qualified." In the written notice from the auditor to the respondent dated April 9, 1976, the auditor offered to help in gaining a similar appointment in another agency in state government. This section does not limit the auditor to an attempt at placing the laid off employee in the position of legal adviser to the auditor with a work station in Bowling Green. The rule requires the auditor to attempt to place the respondent in another position in any department of state government for which he is qualified. There is no contention that respondent was not an accountant par excellence. However, there was no vacancy in the auditor's office for which respondent was qualified. It was not until four months later that a field auditor was employed. Respondent could have availed himself of the opportunity for employment. 101 KAR 1:080, Section 6, provides:

"Certification of Names from the Reemployment List. Any employee with status, who has been placed in a layoff category, shall have first priority for consideration in filling any vacancy in a covered position for which he is qualified in any department in any geographic area. A status employee in the layoff category must indicate in writing to the Department of Personnel that he desires re-employment...."

Under this rule had respondent advised the department in writing that he desired reemployment he would have had first priority in filling any vacancy in any department in state government in any geographic area. Respondent failed to so notify the department.

Rules 101 KAR 1:070, Section 7, and 101 KAR 1:090, Section 6, limit this reemployment list to the class of position from which respondent was laid off (legal adviser); not so under 101 KAR 1:080, Section 6.

The circuit court's opinion and order states: "From the letter and testimony of petitioner himself it was made clear the

petitioner could only be placed in a position he could consider a promotion, and with a Bowling Green work station." In concluding, the trial judge held: "The Board's action herein was neither arbitrary upon the facts presented, nor did it misapply their legal effect."

■ We must measure the action of the circuit court and the Court of Appeals by the standards laid down in KRS 18.-272(5). This court finds that the Board acted within, and not in excess of, its power; that the order appealed from was not procured by fraud or misconduct; that substantial evidence supports the order from which the appeal was taken; and the Board's decision is supported by law.

The decision of the Court of Appeals is reversed, and the judgment of the Franklin Circuit Court is affirmed.

PALMORE, C. J., and AKER, CLAYTON, O'HARA, STEPHENSON and STERNBERG, JJ., sitting.

All concur, except PALMORE, C. J., who dissents and files herewith a dissenting opinion.

PALMORE, Chief Justice, dissenting.

I dissent from the majority opinion because I think it gives too little significance to Sec. 2(3) of 101 KAR 1:120, which says:

"The appointing authority and the department shall attempt to place the employee in another position for which the employee is qualified."

It seems to me that the very least a state agency should do for a tenured employe before laying him off is to make some reasonable effort to see if it cannot place him in some other position for which he is qualified. Certainly this could be done without a wholesale "bumping" of personnel from top to bottom. The suggestion in the majority opinion to the effect that Ayers' claim "strikes at the very heart of the state personnel merit system" is absurd on its face. As a matter of fact, it appears to me that the converse is true.

As I understand the record in this case, there were in fact other positions in the agency that could have been filled by Ayers, but none was offered him before he was laid off. I fully agree with his position that in the absence of such an offer he was not properly terminated, and that he did not have to sign up on a waiting list in order to contest it.